# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT SINGER, *Individually and as Administrator of the Estate of Gloria A. Singer (Deceased)*, | ) ) ) ) | Case No. 1:21-cv-02102 |
| | ) | Judge J. Philip Calabrese |
| Plaintiff, | ) ) | Magistrate Judge Thomas M. Parker |
| v. | ) ) | |
| MONTEFIORE, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |
| STEVEN ROSS, *Individually and as Executor of the Estate of Devorah Bette Ross (Deceased)* | ) ) ) ) | Case No. 1:21-cv-02103 |
| | ) | Judge J. Philip Calabrese |
| Plaintiff, | ) ) | Magistrate Judge William H. Baughman, Jr. |
| v. | ) ) | |
| MONTEFIORE, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |
| ROBYN FINKENTHAL KULBARSH, *as Administrator of the Estate of Marlene S. Finkenthal (Deceased)*, | ) ) ) ) ) | Case No. 1:21-cv-02105 |
| | ) | Judge J. Philip Calabrese |
| Plaintiff, | ) ) | Magistrate Judge David A. Ruiz |
| v. | ) ) | |
| MONTEFIORE, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

| | |
|---|---|
| ESTATE OF CAROL KENNEY, *by Nicholas Laudato, Administrator of the Estate of Carrol Kenney (Deceased)*,<br><br>　　　　Plaintiff,<br><br>v.<br><br>MONTEFIORE HOME, *et al.*,<br><br>　　　　Defendants. | Case No. 1:21-cv-02106<br><br>Judge J. Philip Calabrese<br><br>Magistrate Judge<br>Jonathan D. Greenberg |
| NICHOLAS LAUDATO, *Administrator of the Estate of Carrol Kenney (Deceased)*,<br><br>　　　　Plaintiff,<br><br>v.<br><br>MONTEFIORE HOME, *et al.*<br><br>　　　　Defendants. | Case No. 1:21-cv-02120<br><br>Judge J. Philip Calabrese<br><br>Magistrate Judge David A. Ruiz |
| STEVEN A. ROSS, *Individually and as Executor of the Estate of Devorah Bette Ross (Deceased)*,<br><br>　　　　Plaintiff,<br><br>v.<br><br>MONTEFIORE, *et al.*<br><br>　　　　Defendants. | Case No. 1:21-cv-02148<br><br>Judge J. Philip Calabrese<br><br>Magistrate Judge<br>Jonathan D. Greenberg |

2

| | |
|---|---|
| ROBYN FINKENTHAL KULBARSH, *as Administrator of the Estate of Marlene S. Finkenthal (Deceased)*, <br><br>    Plaintiff, <br><br>v. <br><br>MONTEFIORE, *et al.*, <br><br>    Defendants. | Case No. 1:21-cv-02125 <br><br> Judge J. Philip Calabrese <br><br> Magistrate Judge <br> Jonathan D. Greenberg |

# OPINION AND ORDER

Plaintiffs bring wrongful death claims under State law against a nursing home and its employees, alleging that Defendants failed to protect against the spread of Covid-19. More particularly, Plaintiffs claim that Defendants engaged in willful misconduct, including falsifying Covid-19 test results and failing to comply with masking requirements, that resulted in the deaths of residents of the nursing home. Federal law completely preempts such claims if they result from "covered countermeasures"—those actions specifically taken pursuant to certain regulatory approvals and meeting particular statutory definitions. On the record before the Court, Defendants have not established that the countermeasures at the core of Plaintiffs' claims of willful misconduct meet the prerequisites necessary for federal preemption. Nor does the record show that they do. For these reasons, as more fully explained below, the Court **GRANTS** Plaintiffs' motions to remand.

## ANALYSIS

A defendant may remove a civil action to federal court if the action is one over which the federal court could have exercised original jurisdiction. 28 U.S.C. §§ 1441,

3

1446.  Removal statutes are strictly construed, and "all doubts should be resolved against removal."  *Mays v. City of Flint*, 871 F.3d 437, 442 (6th Cir. 2017) (quoting *Harnden v. Jayco, Inc.*, 496 F.3d 579, 581 (6th Cir. 2007)).  The party removing a case bears the burden of establishing federal jurisdiction.  *Everett*, 460 F.3d at 822 (citing *Gafford v. General Elec. Co.*, 997 F.2d 150, 155 (6th Cir. 1993)).

I.      **Federal Question Jurisdiction**

In these cases, Defendants remove primarily based on federal question jurisdiction.  Under that statute, the "district courts shall have original jurisdiction over all civil actions arising under the Constitution, laws, or treatises of the United States."  28 U.S.C. § 1331.  Generally, an action arises under the law that creates the cause of action.  *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (quoting *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916)).

I.A.    **The Well-Pleaded Complaint Rule**

To determine whether a complaint asserts a cause of action arising under federal law, federal courts employ the well-pleaded complaint rule.  *Loftis v. United Parcel Serv., Inc.,* 342 F.3d 509, 514 (6th Cir. 2003).  Under this rule, courts examine the allegations on the face of the complaint and ignore potential defenses.  *See, e.g.*, *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003).  Because the plaintiff is the master of the complaint, if he or she chooses to assert claims under State law alone, that claim will generally not be re-characterized as a federal claim for purposes of removal.  *Loftis*, 342 F.3d at 515 (citing *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)).  A case may not be removed on the basis of a federal defense, including preemption, even if the complaint anticipates the defense and the defense presents

4

the only question truly at issue. *Roddy v. Grand Trunk W. R.R. Inc.*, 395 F.3d 318, 322 (6th Cir. 2005) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987)). Ordinarily, federal preemption is a defense that does not appear on the face of a well-pleaded complaint. *Metropolitan Life Ins.*, 481 U.S. at 63–64.

However, an exception to the well-pleaded complaint rule bears on removal in these cases. Where a federal statute completely preempts a State-law cause of action, a federal court may exercise jurisdiction on removal notwithstanding the well-pleaded complaint rule. *Beneficial Nat'l Bank*, 539 U.S. at 8. In such circumstances, Congress so completely preempts a particular area that any claim asserted necessarily has a federal character. *Metropolitan Life Ins.*, 481 U.S. at 63–64. Complete preemption for purposes of removal is extraordinary, and the Supreme Court has found it in only three statutes—the Labor Management Relations Act; the Employee Retirement Income Security Act; and the National Bank Act. *Roddy*, 395 F.3d at 323 (citing *Beneficial Nat'l Bank*, 539 U.S. at 6–7). In those instances, the federal statute provides the exclusive cause of action, sets forth procedures governing it, and provides remedies. *Id.* (citing *Beneficial Nat'l Bank*, 539 U.S. at 8). "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state-law claim is considered, from its inception, a federal claim, and therefore arises under federal law." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 472 (1998).

Complete preemption that supports removal differs from ordinary federal preemption. *Warner v. Ford Motor Co.*, 46 F.3d 531, 535 (6th Cir. 1995) (en banc). A defendant may prove that a federal statute preempts the plaintiff's claims, but that

5

will not support removal without more. *Caterpillar*, 482 U.S. at 398. To support removal, a statute must "occupy the regulatory field with respect to a particular subject and to create a superseding cause of action." *Roddy*, 395 F.3d at 323 (quoting *Warner*, 46 F.3d at 535). Moreover, the Sixth Circuit has noted that Congress must "inten[d] to transfer jurisdiction to federal courts." *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 468 n.11 (6th Cir. 2002). For this reason, complete preemption represents a "narrow exception" to the well-pleaded complaint rule. *AmSouth Bank v. Dale*, 386 F.3d 763, 776 (6th Cir. 2004).

### I.B. The PREP Act

Against this backdrop of removal practice and procedure, Defendants remove this case based on federal question jurisdiction under the Public Readiness and Emergency Preparedness Act of 2005, 42 U.S.C. §§ 247d-6d & 247d-6e. In the Act, Congress protected certain covered entities against lawsuits during a public health emergency. In March 2020, the Secretary of the Department of Health and Human Services declared Covid-19 a public health emergency under the Act and recommended various countermeasures to prevent or mitigate the spread of Covid-19. Declaration Under the PREP Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198, 15,201 (Mar. 17, 2020). This state of emergency extends through October 1, 2024 or the final day the declared emergency remains in effect, whichever occurs first. *Id.* at 15,202. This declared emergency remains in effect.

### II.B.1. Immunity under the PREP Act

The Act provides immunity for a covered person under federal and State law for all claims that relate to the use of authorized countermeasures. It provides that

6

"a covered person shall be immune from suit and liability under Federal and State law" for "all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(1). Though broad, this statutory immunity applies only to "a claim for loss that has a causal relationship with the administration to or the use by an individual of a covered countermeasure." *Id.* § 247d-6d(a)(2)(B). In such cases, the Act creates a fund for those injured by covered countermeasures. *Id.* § 247d-6e(a).

### II.B.2. Exception for Willful Misconduct

Congress provided an exception to statutory immunity (and compensation through the fund). The Act provides an exclusive federal remedy for death or serious physical injury that willful misconduct proximately causes. Specifically, the statute provides:

> **(d)    EXCEPTION TO IMMUNITY OF COVERED PERSONS**
>
> **(1)    IN GENERAL**
>
> Subject to subsection (f) [relating to claims by or against the United States and not applicable here], the sole exception to the immunity from suit and liability of covered persons set forth in subsection (a) shall be for an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct, as defined pursuant to subsection (c), by such covered person. For purposes of section 2679(b)(2)(B) of title 28 [involving claims against employees of the United States and not applicable here], such a cause of action is not an action brought for violation of a statute of the United States under which an action against an individual is otherwise authorized.
>
> **(2)    PERSONS WHO CAN SUE**
>
> An action under this subsection may be brought for wrongful death or serious physical injury by any person who suffers such injury or by any representative of such a person.

7

*Id.* § 247d-6d(d). A plaintiff may only maintain such an action in the United States District Court for the District of Columbia. *Id.* § 247d-6d(e)(1). Additionally, the statute provides procedures for suit, including identifying the governing law, pleading requirements, discovery rules, and provisions for damages and appeal, among other things. *Id.* § 247d-6d(e)(2)–(10).

Based on its statutory text and structure, the PREP Act appears to fall into the narrow class of statutes that completely preempt a particular field so as to support removal—at least where the plaintiff alleges death or serious physical injury against a covered person proximately caused by willful misconduct. Because Section 247d-6d(a) extends immunity to all claims under federal and State law for loss relating to covered countermeasures, complete preemption for removal purposes turns on Defendants' use of covered countermeasures in the first instance. Put another way, the path to the exception in subsection (d) of the statute runs through subsection (a), which requires covered countermeasures.

### I.C. Plaintiffs' Allegations

Against that statutory background, the Court considers the allegations of Plaintiffs' complaints in these cases. Though the complaints in these related matters differ on the margins, each makes fundamentally the same allegations.

#### I.C.1. *Singer*

In *Singer*, Plaintiff filed suit against a nursing home (in various corporate manifestations), its administrator, and two of its nurses for wrongful death. ([ECF No. 1-2](#), ¶¶ 2–10, PageID #10–12.) In the complaint, Plaintiff references recommendations for health care professionals that the Centers for Disease Control

8

made for Covid-19, the Governor's executive orders declaring a state of emergency due to Covid-19, and the resources that the Ohio Department of Health made available for nursing homes and their residents. (*Id.*, ¶¶ 11, 12 & 14, PageID #12–13.) Further, the complaint avers that Defendants implemented certain protocols in response to Covid-19, including restrictions on visits and group activities, daily monitoring of symptoms, and the use of masks and other hygienic and screening measures for employees. (*Id.*, ¶ 17, PageID #13.) Plaintiff alleges that Defendants did not follow these precautionary measures. (*Id.*, ¶ 18, PageID #13.) Additionally, Plaintiff alleges that Defendants falsified Covid-19 test results, improperly performed the tests, or refused to test to avoid identifying positive results; ignored staff complaints about Covid-19 prevention and treatment protocols; and failed to implement recommendations, resulting in unsafe conditions that led to the injuries and death of Gloria Singer. (*Id.*, ¶¶ 19–24, PageID #14.)

Based on these allegations, Plaintiff asserts four causes of action for breaches of the standard of care and for wrongful death. (*Id.*, ¶¶ 26–59, PageID #14–20.) In bringing these claims, Plaintiff makes certain allegations that are relevant here. First, in Count I, Plaintiff avers that in September and October 2020 "Defendants recklessly, intentionally, willfully, and wantonly conducted improper and false testing" of the decedent for Covid-19. (*Id.*, ¶ 30, PageID #15.) Further, Plaintiff alleges that "Defendants recklessly, intentionally, willfully, and wantonly hid the fact that other patients and residents" of the nursing home were infected, "thereby exposing" the decedent. (*Id.*)

9

Second, in Count II, Plaintiff alleges gross negligence in conducting and reporting false Covid-19 tests "in addition to being recklessly, intentionally, willfully, and wantonly in that they hid the fact that other patients and residents" of the nursing home were infected. (*Id.*, ¶ 40, PageID #16–17.) Third, in Count III, Plaintiff alleged that, on or about October 13, 2020, Defendants "recklessly, intentionally, willfully, and wantonly conducted improper and false testing" of the decedent for Covid-19. Further, Plaintiff alleges that Defendants "recklessly, intentionally, willfully, and wantonly hid the fact that other patients and residents" of the nursing home were infected, "thereby exposing" the decedent "and all other residents/patients" of the nursing home. (*Id.*, ¶ 50, PageID #18.)

Finally, in Count IV, Plaintiff alleges gross negligence because Defendants "willfully and wantonly failed to perform their duties . . . with an intentional and reckless disregard for the rights and safety of" the decedent, resulting in substantial harm and death. (*Id.*, ¶ 57, PageID #19.) "As a direct and proximate result of Defendants' gross negligence and reckless, intentional, willful, and wanton disregard" for the decedent's rights and interests, Defendants caused her death. (*Id.*, ¶ 58.)

### I.C.2. The Other Complaints

The allegations and claims in *Ross* (ECF No. 1-1, No. 1:21-cv-02148; ECF No. 1-1, No. 1:21-cv-02103) are nearly identical to those in *Singer*, except for the name of the Plaintiff and certain other minor details specific to that Plaintiff. The complaint in *Kenney* and *Laudato* (ECF No. 1-1, No. 1:21-cv-02106; ECF No. 1-1, No. 1:21-cv-02120) asserts five causes of action, not four, but is otherwise

10

substantively similar to *Singer*. Finally, the *Kulbarsh* complaint (ECF No. 1-2, No. 1:21-cv-02105; ECF No. 1-1, No. 1:21-CV-02125) does not materially differ from *Singer*.

### I.D. Application of the PREP Act

As noted, Section 247d-6d(a) provides that covered persons enjoy immunity against suit and liability for all claims of loss "caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." Therefore, the Court begins by considering whether Plaintiffs' claims relate to covered countermeasures, a threshold determination for the Act's liability protections to apply.

#### I.D.1. Covered Countermeasures

An emergency declaration identifies the covered countermeasures that trigger the broad immunity of the PREP Act. *See* 42 U.S.C. § 247d-6d(a)(1). As relevant here, the Secretary identified the following covered countermeasures: any diagnostic or other device used to diagnose, prevent, or mitigate Covid-19 or transmission of the SARS-CoV-2 virus. 85 Fed. Reg. at 15,202. Under the Secretary's emergency declaration, covered countermeasures must be "qualified pandemic or epidemic products," "security countermeasures," or devices authorized for investigational or emergency use, as defined in the PREP Act, the Food, Drug, and Cosmetic Act, and the Public Health Service Act. *Id.* at 15,202.

Plaintiffs' complaints assert claims based, generally, on (1) employee mask wearing; (2) falsifying or improperly performing Covid-19 test results; and (3) not

using a "Point of Care" testing machine that would allow Covid-19 results within minutes, instead of days. Under the PREP Act, covered countermeasures must be:

> (A) a qualified pandemic or epidemic product (as defined in paragraph (7));
>
> (B) a security countermeasure (as defined in section 319F-2(c)(1)(B) [42 USCS § 247d-6b(c)(1)(B)]);
>
> (C) a drug (as such term is defined in section 201(g)(1) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 321(g)(1)), biological product (as such term is defined by section 351(i) of this Act [42 USCS § 262(i)]), or device (as such term is defined by section 201(h) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. 321(h)) that is authorized for emergency use in accordance with section 564, 564A, or 564B of the Federal Food, Drug, and Cosmetic Act [21 USCS § 360bbb-3, 360bbb-3a, or 360bbb-3b]; or
>
> (D) a respiratory protective device that is approved by the National Institute for Occupational Safety and Health under part 84 of title 42, Code of Federal Regulations (or any successor regulations), and that the Secretary determines to be a priority for use during a public health emergency declared under section 319 [42 USCS § 247d].

42 U.S.C. § 247d-6d(i)(1). Based on the record before the Court, the countermeasures on which Plaintiffs base their claims do not appear to meet any of these definitions—or, at least, Defendants have not carried their burden of showing that they do.

### I.D.1.a. Qualified Pandemic or Epidemic Product

The Act defines a "qualified pandemic or epidemic product" as a drug, a biological product, or a device. *Id.* at § 247d-6d(i)(7). Of the countermeasures at issue, the latter appears to apply. The PREP Act references the definition of a device in the Food, Drug, and Cosmetic Act, 21 U.S.C. § 321(h). Additionally, for a device to be a covered countermeasure, the Act requires that the countermeasure meet two more requirements. First, it must be a product used, designed, or procured to diagnose, mitigate, or help prevent the spread of a pandemic. 42 U.S.C. § 247d-

6d(i)(7)(A). Second, it must also have certain specified regulatory approvals under the Food, Drug, and Cosmetic Act. *Id.* § 247d-6d(i)(7)(B).

Defendants fail in their removal papers and briefing to carry their burden of showing that the Covid-19 testing at issue in Plaintiffs' complaints constitutes a qualified pandemic or epidemic product. They make nothing more than a conclusory argument that Plaintiffs' claims relate to Covid-19 diagnostic testing, but fail to establish that the testing at issue meets the particular definitions of the Secretary's emergency declaration or the Act itself. (ECF No. 15, PageID #134–35; ECF No. 17-1, PageID #197.)

### I.D.1.b. Security Countermeasure

A security countermeasure under the Act is a drug, biologic, or device that the Secretary determines is a priority to diagnose, mitigate, prevent, or treat harm from a condition that may result in adverse health consequences or death *and* may be caused by using a drug, biologic, or device against a biological, chemical, radiological, or nuclear agent. 42 U.S.C. § 247d-6b(c)(1)(B)(i). Under this definition, the diagnostic tests, masks, and other countermeasures Plaintiffs reference in their complaints do not constitute security countermeasures, and Defendants do not argue otherwise.

### I.D.1.c. Emergency-Use Authorization

A drug, biologic, or device authorized for emergency use under the Food, Drug, and Cosmetic Act constitutes a covered countermeasure. 42 U.S.C. § 247d-6d(i)(1)(C). Although the masks and diagnostic testing about which Plaintiffs make allegations might meet this definition, Defendants point to no information in the record suggesting these measures do. Nor do they develop an argument that these products

13

meet the definition. (ECF No. 15, PageID #134–35; ECF No. 17-1, PageID #197.) Therefore, the Court determines that Defendants have failed to carry their burden of showing the countermeasures at issue qualify under this provision of the statute.

### I.D.1.d. Respiratory Protective Device

Finally, the masks at issue in the complaints might conceivably be respiratory protective devices within the meaning of 42 U.S.C. § 247d-6d(i)(1)(D), though that is unlikely as a practical matter. But nothing in the record before the Court shows they are, and Defendants make no argument to that effect. Therefore, Defendants have not carried their burden of establishing that the masks or any device or product at issue constitutes a covered countermeasure within the meaning of the statute.

\* \* \*

At bottom, complete preemption for purposes of removal under the PREP Act requires covered countermeasures. Although Plaintiffs base their allegations, in part, on Defendants' alleged failure to mask, falsification of Covid-19 test results, and inadequate or improper testing, Defendants have not placed sufficient information in the record from which the Court can determine that these countermeasures meet the statutory definition or the Secretary's emergency declaration. Nor have Defendants made anything more than conclusory arguments that these measures meet those definitions.

### I.D.2. Estate of Maglioli

To support their removal effort, Defendants rely on *Estate of Maglioli*, 16 F.4th 393 (3d Cir. 2021). There, residents of two nursing homes brought wrongful death claims alleging negligence and seeking punitive damages based on allegations that

the defendants failed to take precautions to prevent exposure to Covid-19. Although the court concluded that the negligence-based wrongful death claims before it did not satisfy the standard for removal based on complete preemption, it recognized that "[t]he PREP Act's language easily satisfies the standard for complete preemption of particular causes of action." *Id*. at 409. In this respect, the Court agrees with the Third Circuit's ruling in *Estate of Maglioli*. However, Defendants recognize that Plaintiffs' claims must relate to covered measures before the PREP Act's complete preemption will permit removal. (ECF No. 15, PageID #134–35; ECF No. 17-1, PageID #197.) Because the record before the Court on removal fails to establish that Plaintiffs' claims relate to covered countermeasures, the Court need not determine whether the balance of the Act's statutory prerequisites apply.

## II.     Federal Officer Removal

One of the individual Defendants, the administrator of the nursing home at issue, also removed these actions on the basis of the federal officer removal statute. (ECF No. 1, ¶ 12, No. 21-cv-2120; ECF No. 1, ¶ 12, No. 21-cv-2148; ECF No. 1, ¶ 12, No. 21-cv-2149.) Under 28 U.S.C. § 1442(a), certain officers of the United States may remove actions to federal court. To do so, the defendant must meet three requirements: (1) he must be a person within the meaning of the statute who acted under the United States, its agencies, or its officers; (2) who is sued for or relating to any act under color of his office; and (3) the defendant must raise a colorable federal defense to the claims. 28 U.S.C. § 1442(a)(1); *Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010) (citations omitted). Private parties may invoke the federal officer

removal statute if they can show that they satisfy these requirements. *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007).

The phrase "acting under" in Section 1442(a)(1) is broad and receives liberal construction. *Id.* But complying with federal laws and regulations does not amount to "acting under" a federal officer, even for a private party whose "activities are highly supervised and monitored" under detailed regulations. *Id.* at 153. To avail themselves of the statute, then, private parties must show that their actions "involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Id.* at 152.

Here, Defendants cannot show that they acted under a federal officer within the meaning of Section 1442(a)(1). At most, the nursing home and its administrator complied with detailed regulations and orders during the Covid-19 pandemic—though at a level less extensive than that at issue in *Watson*, where the Supreme Court rejected the defendant's argument that the statute applied. Defendants make no showing that their efforts during the pandemic assisted or helped carry out the duties of a federal officer. Instead, they maintain that nursing homes have a special relationship with the federal government and during the pandemic function as public health officers to provide services the federal government could not provide on its own. Still, Defendants fail to show that they went beyond mere compliance with the law. Nor do Defendants demonstrate that they are government contractors, the federal government would otherwise have to fulfill the functions the nursing home does, or their special relationship involves authority federal law delegates to them. Therefore, the Court concludes that Section 1442(a)(1) does not apply.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motions to remand and **REMANDS** these cases to State court.

**SO ORDERED.**

Dated: December 27, 2021

                                            J. Philip Calabrese
                                            United States District Judge
                                            Northern District of Ohio